IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALVARO HERNANDEZ,

      Plaintiff,                          No. 2:10-cv-2446 LKK CKD P

   vs.

K. BOUWMAN, et al.,

      Defendants.                FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Plaintiff's remaining claim is that defendant McDaniels (defendant) violated plaintiff's rights arising under the Eighth Amendment by failing to protect plaintiff from inmate violence. Defendant has filed a motion for summary judgment.

I. Summary Judgment Standard

      Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

      Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

1

on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Allegations

In his December 27, 2011 first amended complaint, plaintiff alleges as follows:

1. On June 10, 2008 defendant was the floor officer in charge of T-wing at the California Medical Facility (CMF). T-wing is separated from other sections of CMF by a gate that can only be opened by correctional staff.

2. At some point that day, inmate Hill spoke with defendant from outside the T-wing gate. He appeared to be asking defendant to open the gate. Hill was housed in V-Wing and

was not permitted to be in T-wing. Defendant opened the gate, and allowed Hill to enter unsupervised.

3. After gaining entrance, Hill attacked plaintiff. During the attack, Hill knocked out two of plaintiff's teeth.

4. Defendant heard plaintiff yell, exited his office and found plaintiff lying on the ground.

III. Eighth Amendment Standard For Protecting Inmates From Violence

The Eighth Amendment's prohibition of cruel and unusual punishment imposes on prison officials, among other things, a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). An inmate's Eighth Amendment rights can only be violated by a prison official if that official exposes an inmate to a "substantial risk of serious harm," while displaying "deliberate indifference" to that risk. Id. at 834. An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837.

In the context of failure to protect an inmate from a known threat to safety, deliberate indifference does not require an express intent to punish. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). The standard also does not require that the official believe "to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur." Id.

IV. Defendant's Argument And Analysis

Defendant argues there is no genuine issue of material fact as to whether he was deliberately indifferent to a serious risk of harm to plaintiff. Defendant presents his own affidavit. In the affidavit, he asserts as follows:

4

1. On June 10, 2008, defendant worked as a housing officer in T-wing. He was not normally assigned to T-wing. His duties included controlling the movements of inmates. When inmates returned from breakfast that day, it was defendant who allowed the inmates to enter through the T-wing gate. Because defendant was not normally assigned to T-wing he was not familiar with the inmates living there. Defendant locked the gate behind the inmates that entered after breakfast.

2. Defendant admits that inmates are generally not permitted inside housing units other than their own, unless the inmate works in the housing unit. However, because he was not regularly assigned to T-wing, it was difficult for defendant to determine who lived there.

3. At approximately 10:10 a.m., while working in the T-wing office, defendant heard someone yell. Defendant and another officer exited the office and saw plaintiff lying on the floor with inmate Hill standing across from him. Both inmates were handcuffed and questioned and then taken to the Unit IV Sergeant.

4. Defendant does not remember letting inmate Hill into T-wing and was not familiar with Hill before the altercation with plaintiff. Prior to the incident with plaintiff, defendant had no knowledge of any animosity between plaintiff and inmate Hill, nor did defendant know Hill was a threat to plaintiff's safety.

Defendant also presents plaintiff's answers to defendant's interrogatories in which plaintiff admits as follows:

1. The altercation with inmate Hill took place in front of the T-wing office. Hill attacked plaintiff without provocation. Resp. to Interrog. #13.

2. Plaintiff did not hear the conversation he alleges occurred between defendant and inmate Hill prior to defendant admitting Hill into T-wing. Resp. to Interrog. #16.

Finally, defendant presents the transcript of plaintiff's deposition. At his deposition, plaintiff indicated he had met inmate Hill previously at CMF, and he did not know why Hill attacked plaintiff. RT 17.


Plaintiff does not present any evidence in opposition to defendant's motion.

For purposes of defendant's motion, the court accepts plaintiff's assertion that if defendant had not permitted inmate Hill entrance into T-wing, plaintiff would not have been attacked by Hill.  However, defendant is still entitled to summary judgment as there is nothing before the court suggesting defendant had any reason to suspect that allowing Hill to enter T-wing posed a substantial risk of serious harm to plaintiff.  Most importantly, there is nothing before the court suggesting what Hill's motive for attacking plaintiff was or that Hill was known to be dangerous in general, let alone that defendant knew that Hill posed a threat to plaintiff.  For these reasons, the court will recommend that defendant's motion for summary judgment be granted, and this case be closed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (Dkt. No. 66) be granted;

2. Defendant McDaniels be dismissed from this action; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 27, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1/hern2446.57